**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,<br>　　　Plaintiff,<br><br>　　　v.<br><br>MARTIN MOORE,<br><br>and<br><br>DAVID YOHANNAN, *as trustee for the benefit of* EMMA YOHANNAN and ETHAN YOHANNAN,<br>　　　Defendants.<br>---------------------------------------------------------------<br>DAVID YOHANNAN, *individually and as trustee for the benefit of* EMMA YOHANNAN and ETHAN YOHANNAN<br>　　　Third-Party Plaintiffs,<br><br>　　　v.<br><br>MARTIN MOORE, *as executor* of the Estate of KRISTIN YOHANNAN MOORE<br><br>and<br><br>MARTIN MOORE, *as trustee* of The Moore Family Joint Trust u/a January 19, 2007<br>　　　Third-Party Defendants. | Civil Action No. 1:19-cv-1312 |

**MEMORANDUM OPINION**

Plaintiff Northwestern Mutual Life Insurance Company ("Northwestern") filed this Rule 22, Fed. R. Civ. P. interpleader action following the death of Kristin Yohannan Moore ("Decedent"), seeking a determination of the proper beneficiary or recipient of the funds payable under Decedent's $500,000 life insurance policy (the "Policy"). The two interpleaded claimants

1

for the Policy funds are Decedent's surviving spouse, Martin Moore ("Moore") and Decedent's surviving former spouse, David Yohannan ("Yohannan"). At issue now on Yohannan's motion for summary judgment is a determination of the proper disposition of the Policy funds.[1] Both Yohannan and Moore agree that the Policy funds must ultimately be disbursed for the benefit of Emma Yohannan ("Emma") and Ethan Yohannan ("Ethan"), children of Decedent's marriage to Yohannan and who are now 26 and 23 years old, respectively. However, Yohannan and Moore disagree on whether the Policy funds must be held in a trust that withholds distribution of the Policy funds until Emma and Ethan each turn 35 years old. The matter has been fully briefed and argued, including a telephonic hearing that occurred on July 22, 2020. Accordingly, the matter is now ripe for disposition.[2]

**I.**

The following undisputed facts are pertinent to the parties' dispute over the proper disposition of the Policy funds.

- Northwestern is a Wisconsin insurance company. *See* Compl. ¶ 1.

- Yohannan is Decedent's first husband and is a citizen of Virginia. *See id.* ¶ 3; *see also* JSF ¶ 1 (Dkt. 34).

- Moore is Decedent's second husband and is a citizen of Virginia. *See* Compl. ¶ 2; *see*

---

[1] This Memorandum Opinion addresses summary judgment for each claimant. Although Moore has not himself filed a cross-motion for summary judgment, Moore's opposition brief seeks dismissal of Yohannan's claims and also asserts a claim with respect to the Policy funds. *See* Moore Opp'n at 8 (Dkt. 24). Yohannan has responded to each of Moore's arguments, and the parties have agreed to a Joint Statement of Facts ("JSF"). *See* JSF (Dkt. 34); Yohannan Reply at 2–9 (Dkt. 27). Accordingly, it is appropriate to dispose of all claims on summary judgment. *See Velasquez v. Salsas & Beer Rest., Inc.*, 735 F. App'x 807, 809 (4th Cir. 2018) (district court may *sua sponte* grant summary judgment for the non-moving party where the non-moving party's opposition brief provides the moving party "sufficient notice that he need[s] to put forth all evidence in favor of his [] claim[s]").

[2] The primary matter ripe for disposition is the Rule 22 interpleader action brought by Northwestern and naming Moore and Yohannan as the two competing claimants for the Policy funds. *See infra* Part II. Although Yohannan has filed (1) two cross claims against Moore and (2) three claims in a third-party complaint against Moore as Executor and Trustee, these five claims must be dismissed. In this regard, three of these claims—Cross Claims 1 and 2, and Third Party Claim 2—must be dismissed because they are necessarily decided by the disposition of the Rule 22 interpleader action. The other two claims—Third Party Claims 1 and 3—must be dismissed because it is appropriate to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). *See infra* Part III.

*also* JSF ¶ 12.[3]

- Emma and Ethan are children of Decedent's marriage to Yohannan. *See* JSF ¶ 2. Emma and Ethan, now 26 and 23 years old, respectively, are currently both pursuing graduate degrees.[4]

- Decedent and Yohannan were married on September 12, 1992. *See* JSF ¶ 1.

- On March 31, 2003, Decedent purchased the Policy, a $500,000 life insurance policy with Northwestern. *See id.* ¶ 3; Policy (Dkt. 39-1).

- The Policy named Yohannan as the primary beneficiary and Emma and Ethan as the contingent beneficiaries.[5] *See* Policy at 16.

- In August 2003, Decedent and Yohannan separated. *See* JSF ¶ 4.

- On October 20, 2003, Decedent changed the beneficiary designations in the Policy. Specifically, Decedent removed Yohannan as the primary beneficiary, naming her father, Richard Woycik, as the new primary beneficiary, and renaming Emma and Ethan as the contingent beneficiaries. *See* Policy at 22.

- On January 14, 2004, Decedent and Yohannan executed a Property Settlement Agreement ("PSA"). *See* JSF ¶ 7; *see also* PSA (Dkt. 22-1).

- The PSA contains the following provisions.

    o The PSA requires Decedent to maintain the Policy until Emma and Ethan each turn 25 years old. *See* PSA ¶ 22.

    o The PSA requires Decedent to maintain "Husband as Trustee for the benefit of the children" as the sole beneficiary of the Policy. *Id.* The PSA also states that, within 30 days of signing the PSA, Decedent must provide Yohannan "written proof of this beneficiary designation." *Id.* ¶ 23.

    o The PSA states that "the welfare and best interests of the children, Emma and Ethan, are the paramount consideration" of Decedent and Yohannan. *Id.* ¶ 6.

---

[3] Subject matter jurisdiction exists over the Rule 22 interpleader action because "the diversity requirement is satisfied in a Rule interpleader case when each stakeholder is diverse from each claimant. . . [and] the interests of the parties are genuinely adverse." *Leimbach v. Allen*, 976 F.2d 912, 916 (4th Cir. 1992). In other words, the competing claimants in a Rule 22 interpleader action need not be diverse from each other. *See id.* Importantly, however, this interpretation of the diversity requirement applies solely to the Rule 22 interpleader action and does not confer jurisdiction over claims between claimants in a Rule interpleader action, such as cross claims and third-party claims. *See infra* Part III.

[4] *See* Moore Decl. ¶¶ 17–18 (Dkt. 24-3); Yohannan Decl. ¶¶ 3–4 (Dkt. 22-4); Richard Woycik Decl. ¶ 2 (Dkt. 24-6).

[5] The Policy defines "contingent beneficiary" as a beneficiary who takes if the primary beneficiary dies. Policy at 10.

- o The PSA states that Decedent and Yohannan are not responsible for paying Emma and Ethan's educational expenses once Emma and Ethan each turn 23 years old. *See id.* ¶ 24.

- o The PSA, by its terms, is governed by Virginia law. *See id.* ¶ 43.

- No party disputes that "Husband" in the PSA means Yohannan, that "Wife" in the PSA means Decedent, that the "children" in the PSA are Emma and Ethan, and that the PSA contemplates a trust for the benefit of Emma and Ethan.[6]

- Although the PSA does not state who must create and determine the provisions of the referenced trust for Emma and Ethan, the PSA's primary provisions about the Policy, Paragraphs 22 and 23, direct each obligation with respect to the Policy at "Wife."[7]

- As of February 14, 2004, thirty days after the PSA was signed, Decedent had not changed the Policy beneficiary to "Husband as Trustee for the benefit of the children." Nor, as of this date, had Decedent or Yohannan created and determined the terms of a trust for the benefit of Emma and Ethan, as required by the PSA.

- On November 9, 2004, the Circuit Court of Fairfax County, Virginia, adopted Decedent's and Yohannan's agreed-upon PSA into a Final Decree of Divorce. *See* JSF

---

[6] *See* Yohannan Reply at 6 ("The PSA expresses each party's intention to create a trust for the benefit of the children, naming the surviving spouse as trustee."); Yohannan Mot. for Summary Judgment at 14 (Dkt. 22) (same); Moore Opp'n at 6, 8 (same).

[7] In full, Paragraphs 22 and 23 read as follows:

> 22. Wife agrees to keep in full force and affect [sic] the currently existing life insurance policy on her life and to maintain Husband as Trustee for the benefit of the children of the marriage. Wife agrees that said amount of Life Insurance shall be Five Hundred Thousand Dollars ($500,000.00). Wife currently holds said policy with Northwestern Mutual and the policy number is [REDACTED IN PSA]. Wife agrees to pay all premiums thereon as they become due. Wife shall maintain this policy until said children have attained the age of twenty-five (25) at which time she may cancel it.
>
> 23. Wife shall provide written proof of this beneficiary designation within thirty (30) days from the date of this Agreement. Wife shall be permitted to designate a contingent beneficiary to said policy in the event of Husband's death prior to her own. Wife hereby warrants that said policy is free from loans, lien or encumbrances and is neither owned by a trust nor held as an asset within any trust. Wife will provide Husband with a copy of the entire policy, including the declaration page from said policy, and, on a semi-annual basis, will provide Husband with proof of payment of all premiums on the policy. Wife will also cause to be delivered to the insurer, within fifteen (15) days of the execution of this Agreement, written instructions directing that it notify [sic] Husband in the event that Wife fails to make a timely premium payment on said policy. A copy of this letter will be forwarded to Husband simultaneous [sic] with its forwarding to the insurer. Should the life insurance policy lapse for any reason caused by Wife, or as a direct result of a failure by Wife to make a required premium payment, Husband shall retain the right, upon Wife's death, to claim against Wife's estate, personal representatives, agents, heirs, assigns, trustees, or against any trust established by Wife for such failure. The terms of this paragraph shall remain in effect until the obligations under the terms of this Agreement have been fulfilled.

*Id.* ¶¶ 22–23.

4

¶ 8.

- On October 18, 2009, Decedent married Moore. *See id.* ¶ 12; *see also* Woycik Decl. ¶ 6.

- On March 25, 2015, Decedent again changed the beneficiary designations in the Policy. Specifically, Decedent removed Woycik as the primary beneficiary, naming Moore as the new primary beneficiary, and renaming Emma and Ethan as the contingent beneficiaries. *See* Policy at 24.

- On January 19, 2017, Decedent and Moore created The Moore Family Revocable Joint Trust, a trust requiring the trustees, Decedent and Moore, to pay the trust principal and accumulated trust income to Emma, Ethan, and Moore's four children of a previous marriage. *See* Moore Family Trust at 1, 3 (Dkt. 22-6).

- On May 1, 2019, Decedent died, and the Policy's $500,000 benefit became due and payable. *See* JSF ¶ 15. At this time, the Policy beneficiary designations on-file with Northwestern were Moore as primary beneficiary and Emma and Ethan as contingent beneficiaries. *See* Compl. ¶ 10.

- On June 3, 2019, Yohannan filed a claim with Northwestern, requesting disbursement of the Policy funds to a trust bank account created on an unknown date in June 2019. *See* Yohannan Decl. ¶ 21.

- On June 8, 2019, after Yohannan filed his initial claim, Yohannan created two separate but identical irrevocable trusts, one for the benefit of Emma and one for the benefit of Ethan (collectively, the "Yohannan Trusts"). *See* Yohannan Trust for Emma (Dkt 24-5); Yohannan Trust for Ethan (24-4).

- The Yohannan Trusts, identical in all relevant respects, contain the following terms:

    o Yohannan is trustee and as of June 8, 2019, each trust holds $1. *See* Yohannan Trust for Emma at 1; Yohannan Trust for Ethan at 1.[8]

    o Until Emma and Ethan each turn 35 years old, Yohannan has sole discretion to decide whether or not to distribute the trust funds to Emma and Ethan. If so, Yohannan may distribute the trust funds as he "deems necessary for [Emma and Ethan's] health, support, maintenance, comfort, and education." Yohannan Trust for Emma ¶ 3; Yohannan Trust for Ethan ¶ 3.

    o Until Emma and Ethan each turn 35 years old, Yohannan can use the trust funds for a variety of purposes, including to acquire property "such as homes, art work [sic], jewelry, furniture and vehicles." Yohannan Trust for Emma ¶ 5; Yohannan Trust for Ethan ¶ 5.

---

[8] The record does not indicate whether Yohannan has ever placed any additional funds in the Yohannan Trusts.

- o Until Emma and Ethan each turn 35 years old, Yohannan has "absolute discretion" to decide whether or not Emma and Ethan can make use of property the Yohannan Trusts acquire. Yohannan Trust for Emma ¶ 5; Yohannan Trust for Ethan ¶ 5.

- o Once Ethan and Emma each turn 35 years old, the Yohannan Trusts terminate and Yohannan must award "the remaining principal and the accumulated net income of the trust" to Emma and Ethan. Yohannan Trust for Emma ¶ 4; Yohannan Trust for Ethan ¶ 4.

- On June 11, 2019, following the establishment of the Yohannan Trusts, Yohannan filed another claim with Northwestern, requesting disbursement of the Policy funds to a trust bank account. *See* Yohannan Decl. ¶ 21.

- Around this time, Moore filed a claim with Northwestern, requesting disbursement of the Policy funds.[9]

- On October 14, 2019, Northwestern filed this Rule 22 interpleader action, asking "[t]his Court to determine to whom the Benefits should be paid under the Policy." *Id.* ¶ 18.

- On April 15, 2020, Northwestern deposited the $503,750.34[10] payable under the Policy into the Clerk's Registry. *See* Interpleader Deposit (Dkt. 20).

## II.

In support of summary judgment on the Rule 22 interpleader action, Yohannan, Decedent's first husband and former spouse, argues that the Policy funds must go to "Yohannan as Trustee for the benefit of the children," arguing that this beneficiary designation in the PSA takes priority over any contrary beneficiary designation. Moore, Decedent's second husband, opposes this outcome but does not address the applicable Virginia law that Yohannan cites to support Yohannan's claim. Rather, Moore argues that the Policy funds should go directly to Emma and Ethan, children of Decedent's marriage to Yohannan, as neither Emma nor Ethan requires a trustee and since the

---

[9] The record does not indicate whether Moore made a claim for the Policy funds in a personal capacity or on behalf of Emma and Ethan. This lack of specificity is immaterial to disposition of the Rule 22 interpleader action.

[10] Although the Policy funds originally totaled $503,750.34, the parties agreed to a consent motion to permit Northwestern to claim $7,900.40, representing Northwestern's costs and expenses incurred in this interpleader litigation. *See* Consent Motion (Dkt. 13); *see* Order Adopting Consent Motion (Dkt. 15). Thus, the total amount at issue on summary judgment is $495,849.94.

Yohannan Trusts, created after Yohannan filed a claim for the Policy funds, do not satisfy the PSA's requirements on appropriate trust terms. Alternatively, Moore argues that if the Policy funds must be distributed to a trust, then the funds should be distributed to the Moore Family Trust.

Analysis of Yohannan's Motion for Summary Judgment on the Rule 22 interpleader action properly begins with recognition and application of the settled Virginia rule that a property settlement agreed to by the divorcing parties and adopted as part of a divorce decree takes precedence over and replaces existing beneficiary designations in an insurance agreement.[11] This settled Virginia rule, applied here, makes clear that the PSA's beneficiary designation, "Husband as Trustee for the benefit of the children," replaces and supersedes all contrary beneficiary designations. It therefore follows that Moore has no claim to the Policy funds, as Moore is not the Husband referred to in the PSA, and the PSA supersedes the beneficiary designations in the Policy. Accordingly, neither Moore nor the Moore Family Trust may (i) claim the Policy funds, (ii) assign the Policy funds, or (iii) serve as trustee over the Policy funds.[12]

Although Moore has no claim to the Policy funds, it does not follow that these funds must be awarded to Yohannan as Trustee, for the Yohannan Trusts established by Yohannan as Trustee to receive the funds are plainly inconsistent with, and contrary to, the PSA's provisions concerning an appropriate trust. In this respect, the parties agree that the PSA contemplates a trust "for the benefit" of Emma and Ethan, and here, the record makes clear that the Yohannan Trusts do not benefit Emma and Ethan. Quite clearly, the Yohannan Trusts violate four specific provisions of

---

[11] *See Wood v. Martin*, 848 S.E.2d 809, 813–14 (Va. 2020) (awarding disputed life insurance proceeds to the party listed in the property settlement agreement); *Jones v. Harrison*, 458 S.E.2d 766, 770 (Va. 1995) (same); *Lincoln Nat. Life Ins. Co. v. Johnson*, 38 F. Supp. 2d 440, 451–52 (E.D. Va. 1999) (same).

[12] Appropriately, Moore does not argue that the PSA's beneficiary designation is defeated by Va. Code § 20-111.1, Virginia's revocation of benefits by divorce statute. Put simply, Va. Code § 20-111 does not govern where, as here, the divorced parties finalize "a written agreement [that] provides for a contrary result as to specific death benefits." Va. Code § 20.111.1(C); *Jones v. Jones*, 206 F. Supp. 3d 1098, 1112 (E.D. Va. 2016) (same).

the PSA.

- <u>The PSA Required Decedent to Create and Determine the Trust Terms</u>:  Paragraphs 22 and 23 of the PSA, the PSA's primary provisions regarding the Policy, make clear that Decedent, not Yohannan, must create and determine the terms of the trust to receive the Policy funds.[13]  The Yohannan Trusts, however, were created by Yohannan and therefore do not comport with the PSA.[14]

- <u>The PSA Required Timely Creation of a Trust</u>: Paragraph 22 of the PSA required creation of a trust reasonably contemporaneously with the adoption of the PSA.[15]  Thus, even assuming *arguendo* that the PSA permits Yohannan to create the trust, Yohannan failed to do so in the requisite time period.  Interestingly, Yohannan did not establish the Yohannan Trusts until June 8, 2019, more than 15 years after the PSA and not until after Yohannan filed a claim for the Policy funds.

- <u>The PSA Does Not Authorize Yohannan to Acquire Personal Property</u>: Nothing in the PSA provides support for a trust provision authorizing Yohannan to use the Policy funds to acquire "art work [sic], jewelry, furniture and vehicles."[16]  Indeed, it is hard to see how Yohannan's acquisition of "art work [sic], jewelry, furniture and vehicles" complies with the PSA's requirement of a trust "for the benefit" of Emma and Ethan—especially because this very provision authorizing Yohannan to acquire such property also affords Yohannan "absolute discretion" to preclude Emma and Ethan from using the "art work [sic], jewelry, furniture and vehicles."[17]

- <u>The PSA Does Not Authorize Yohannan to Withhold Distributions</u>: Nothing in the PSA

---

[13] This is evident because every obligation listed in Paragraphs 22 and 23 regarding the Policy is directed at "Wife." *Id.* ¶¶ 22–23.  Nothing in Paragraphs 22 and 23 indicate that Yohannan, the contemplated trustee of the trust, had authority to create the trust or to determine its terms.  Indeed, Decedent necessarily had to create the trust, for at the time the PSA was signed, only Decedent, the Policy owner, held the property (the Policy) to be conveyed in trust.  *See* Va. Code § 64.2-701 (defining "settlor" as the person "who creates or contributes property to a trust" and "trust instrument" primarily as "a record executed by the settlor"); *Gelber v. Glock*, 293 Va. 497, 506 n.6 (2017) (applying definition of settlor in Va. Code § 64.2-701); Va. Code § 64.2-720 ("A trust is created only if . . . [] the settlor has capacity to create the trust"); *Restatement (Third) of Trusts § 11* (1996) (explaining that "an owner of property [] has capacity to create a trust").

[14] Although Decedent participated in the creation of the Moore Family Trust, this trust cannot receive the Policy funds because, as discussed *supra*, Moore has no claim to the funds.  Additionally, the Moore Trust cannot receive the Policy funds because this trust benefits six children, including Moore's four children of a previous marriage, who are not beneficiaries under the PSA.

[15] *See* PSA ¶¶ 22–23 (requiring "written proof" of the beneficiary designation "Husband as Trustee for the benefit of the children" within 30 days of signing the PSA).

[16] Yohannan Trust for Emma ¶ 5; Yohannan Trust for Ethan ¶ 5.

[17] PSA ¶ 22; *id.* ¶ 6 ("the welfare and best interests of . . . Emma and Ethan, are the paramount consideration); *Owens v. Owens*, 196 Va. 966, 973 (1955) ("[T]he trustee shall not be allowed . . . to serve himself under the pretense of serving his *cestui que trust*."); Va. Code § 64.2-764(A) ("A trustee shall administer the trust solely in the interests of the beneficiaries").

provides support for a trust provision authorizing Yohannan to withhold distributions from Emma and Ethan until each of them turn 35 years old.

In sum, the Policy funds cannot be awarded to the Yohannan Trusts because these trusts do not comply with the PSA's provisions requiring timely creation of a trust and appropriate trust terms.

Because the Yohannan Trusts do not comply with the PSA's provisions, Moore has sought an Order directing the Clerk to disburse the Policy funds directly to Emma and Ethan. In support of this claim, Moore argues that Emma and Ethan are the intended beneficiaries of the Policy and that Emma and Ethan, now adults ages 26 and 23 years old, respectively, simply do not require a trust or trustee to supervise and administer the distribution of the Policy funds. Yohannan, who purports to represent Emma and Ethan in this lawsuit, opposes this outcome, arguing that direct payment to Emma and Ethan is inappropriate because the PSA does not expressly provide for such a solution.[18] Notably, Yohannan does not challenge Moore's contention that Emma and Ethan are now responsible adults capable of controlling their own finances.

Here, it is appropriate to award the Policy funds directly to Emma and Ethan without the intervention or need for a trust or a trustee, given that direct payment to Emma and Ethan properly construes the PSA in a manner that "effectuate[s] the real intent" of the words therein.[19] In this respect, the PSA is unmistakably clear that the Policy funds must be disbursed "for the benefit of

---

[18] Yohannan argues that direct payment of the Policy funds to Emma and Ethan violates the PSA's anti-amendment provision. This argument plainly fails. Nothing in this Memorandum Opinion amends the terms of the PSA. Rather, as discussed *infra*, the result reached here merely interprets the PSA, as required by the PSA's choice of law provision. *See id.* ¶ 43 ("This Agreement shall be construed in accordance with the laws of Virginia").

[19] *Pellegrin v. Pellegrin*, 31 Va. App. 753, 759 (2000) (quoting *Va. Ry. & Power Co. v. City of Richmond*, 129 Va. 592, 611 (1921)) (explaining that courts construing a property settlement agreement may "'give effect to that construction which will effectuate the real intent and meaning of the parties'"); *Reid v. Reid*, No. 1862-16-1, 2017 WL 3707595, at *5 (Va. Ct. App. Aug. 29, 2017) (same); *Smith v. Smith*, 15 Va. App. 371, 374 (1992) (brackets added) (internal citation omitted) ("'In reviewing the [property settlement] agreement, we must gather the intent of the parties and the meaning of the language, if we can, from an examination of the entire instrument, giving full effect to the words the parties actually used.'").

the children" and that "the welfare and best interests of the children, Emma and Ethan, are the paramount consideration." PSA ¶¶ 6, 22. At this time, "the welfare and best interests of the children" are best served by awarding the funds directly to Emma, who is now 26 years old, and Ethan, who is now 23 years old. Both are now responsible adults pursuing graduate degrees and may well need to use the Policy funds to pay graduate school tuition, room, and board, or to pursue other aspirations or goals. Indeed, it appears that Emma and Ethan have set clear goals for themselves: Emma will soon graduate from a Physician's Assistant Program and Ethan intends to become a medical doctor. Consequently, neither Emma nor Ethan requires the guidance or supervision of a trustee or a trust and it is appropriate to award the Policy funds directly to Emma and Ethan.[20]

Importantly, this decision to award the Policy funds directly to Emma and Ethan is consistent with the Supreme Court of Virginia's decisions in *Jones* and *Wood*, mentioned *supra* n.11. In both *Jones* and *Wood*, the Supreme Court of Virginia invoked an equitable remedy to award the life insurance proceeds to the proper beneficiary. For example, in *Jones*, the Supreme Court of Virginia imposed a "constructive trust" over the disputed life insurance proceeds in order to award the funds to the children of the decedent's first marriage. *See Jones*, 458 S.E.2d at 770. Similarly, in *Wood*, the Supreme Court of Virginia invoked the remedy of "equitable assignment" to award the policy funds to the party with the "superior" equitable claim. *Wood*, 848 S.E.2d at 814. Here, the equities favor distribution of the Policy funds to Emma and Ethan, as they are clearly the intended recipients of the Policy funds. *See* PSA ¶¶ 6, 22–23. Thus, the decision to

---

[20] Even if the PSA requires imposition of a trust and trustee past age 23, it is appropriate to eliminate the trust and trustee position because Emma and Ethan are now adults and do not need the supervision or guidance of a trust or a trustee. *See* PSA ¶¶ 10, 24; *see also Ward v. NationsBank of Va.*, 256 Va. 427, 440 (1998) ("Removal of a trustee is within the discretion of the trial court . . . [and] [t]he trial court must determine whether it is in the best interest of the trust."); *see also In re A.H. Robins Co., Inc.*, 880 F.2d 779, 786 (4th Cir. 1989) (quoting *Willson v. Kable*, 177 Va. 668, 671 (1941)) ("'In all cases the real guide is whether or not it is best for the trust estate that the trustee be removed.'").

award the funds directly to Emma and Ethan and without the need for a trust or trustee is in accord with applicable Virginia law. Accordingly, the Rule 22 interpleader action regarding the proper disposition of the Policy funds must resolved as follows: the proper recipients of the Policy funds are Emma and Ethan, and both Emma and Ethan should each receive one-half of the interpleaded Policy funds.[21]

### III.

Although the parties have focused primarily on the now-resolved Rule 22 interpleader action, Yohannan has filed and sought summary judgment on five additional claims, namely:

> (1) a cross claim against Moore, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that the proper beneficiary of the Policy funds is Yohannan as Trustee for the benefit of Emma and Ethan ("Cross Claim 1").
>
> (2) a cross claim against Moore for creation of a state law constructive trust over the Policy funds in the event Moore is named the beneficiary ("Cross Claim 2").
>
> (3) a state law claim in a third-party complaint against Moore as Executor of Decedent's Estate, seeking payment of attorneys' fees pursuant to a provision in the PSA purportedly requiring Decedent's estate to indemnify Yohannan in the event of litigation ("Third-Party Claim 1").
>
> (4) a state law claim in a third-party complaint against Moore as Executor of Decedent's Estate for breach of contract, alleging that Decedent breached the PSA by modifying the Policy's beneficiary designation and that, in the event Moore is named the beneficiary of the Policy, Decedent's estate is liable for this breach ("Third-Party Claim 2").
>
> (5) a state law claim in a third-party complaint against Moore as Executor of Decedent's Estate, alleging that Decedent defrauded Yohannan in connection with the PSA and that Decedent's estate is

---

[21] There are no genuine issues of material fact that preclude this result on summary judgment. In this respect, the parties have agreed to a Joint Statement of Facts and all facts necessary to disposition of the Rule 22 interpleader action are in the record. Although the parties have submitted witness lists in preparation for trial, there is no indication that the testimony of these witnesses would create a disputed issue of material fact on the Rule 22 interpleader action.

11

liable for this alleged fraud ("Third-Party Claim 3").[22]

Summary judgment must be granted for Moore on Cross Claim 1, Cross Claim 2, and Third-Party Claim 2 and these three claims must be dismissed, for disposition of the Rule 22 interpleader action necessarily decides these three claims.[23] *See Velasquez*, 735 F. App'x at 809 (holding that district courts may *sua sponte* grant summary judgment for the non-moving party).

The remaining two claims—Third-Party Claims 1 and 3—raise a threshold question of subject matter jurisdiction, as both claims involve a dispute between citizens of Virginia. Although a Rule 22 interpleader action requires diversity of citizenship only between the stakeholder and the competing claimants, this requirement does not confer diversity jurisdiction over other claims in a Rule 22 interpleader action. In this respect, claims other than the Rule 22 interpleader action require an independent basis for jurisdiction or supplemental jurisdiction. *See, e.g.*, *Travelers Ins. Co. v. First Nat. Bank of Shreveport*, 675 F.2d 633, 637–38 (5th Cir. 1982) (determining that district court lacked jurisdiction over cross claims between non-diverse claimants in Rule 22 interpleader action regarding the ownership of a life insurance policy).[24] Accordingly, it is necessary to determine *sua sponte* whether subject matter jurisdiction exists over the two

---

[22] Moore's summary judgment brief also asserts a claim for reimbursement, alleging that if Emma and Ethan receive the Policy funds, Emma and Ethan, citizens of Virginia, should pay Moore $111,324.67, representing educational, health insurance, and other expenses Moore incurred for the benefit of Emma and Ethan after Decedent's death in May 2019. *See* Moore Opp'n at 8; *see also* Moore Decl. ¶ 16 (listing expenses for Emma and Ethan); Compl. ¶ 4. However, Emma and Ethan are not parties to this lawsuit and supplemental jurisdiction is discretionarily declined over this claim pursuant to 28 U.S.C. § 1367(c)(3), for the same reasons expressed *infra*.

[23] Cross Claim 1 is duplicative of the Rule 22 interpleader action, and Cross Claim 2 and Third-Party Claim 2 are conditioned on a result—a decision naming Moore the beneficiary of the Policy—which has not and will not occur here. Yohannan's claim under Third-Party Claim 2 to recover the $7,900.40 payable to Northwestern also must be denied because the parties consented to this payment to Northwestern. *See* Consent Motion (Dkt. 13).

[24] *See also Brooks Run Coal Co. v. Waggy*, 813 F.2d 400 (Table), 1986 WL 18586, at *1 n.3 (4th Cir. 1986) (citing *Travelers*, 675 F.2d at 633); *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 (10th Cir. 1990) (discussing exercise of supplemental jurisdiction over claim in third-party complaint between non-diverse third-party plaintiff and third-party defendant). Similarly, Yohannan's related contention that the statutory interpleader provision confers jurisdiction is plainly wrong, for statutory interpleader expressly requires "two or more adverse claimants, of diverse citizenship." 28 U.S.C. § 1335(a)(1); *Prudential Ins. Co. of Am. v. Coffman*, 829 F.3d 1120 (Table), 1987 WL 38632, at *1 (4th Cir. 1987) (applying 28 U.S.C. § 1335).

remaining claims. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (holding that "questions of subject-matter jurisdiction . . . must[] be raised *sua sponte*").

Here, there is no basis for subject matter jurisdiction over Third-Party Claims 1 and 3 independent of supplemental jurisdiction.[25] As for supplemental jurisdiction, it is appropriate to decline supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c). Although these two claims may arise out of the same "common nucleus of operative fact" as the Rule 22 interpleader action,[26] the Rule 22 interpleader action has now been resolved on summary judgment. *See supra* Part II. Accordingly, the sole claim for which original jurisdiction existed has been extinguished and it is appropriate to decline supplemental jurisdiction over Third-Party Claims 1 and 3 under 28 U.S.C. § 1367(c)(3).[27]

### IV.

For the reasons set forth above, Yohannan's Motion for Summary Judgment must be denied. Additionally:

> (1) Summary judgment on the Rule 22 interpleader action must be granted *sua sponte* for Moore in so far as Emma and Ethan Yohannan must be declared the proper recipients of the Policy funds but denied in all other respects. Accordingly, with respect to the Rule 22 interpleader action:

---

[25] Federal question jurisdiction does not exist with respect to Third-Party Claims 1 and 3 because these claims are state law claims for indemnification and fraud. *See* 28 U.S.C. § 1331; *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action"). Diversity jurisdiction does not exist for the simple reason that Yohannan and Moore, the adverse parties with respect to these claims, are both citizens of Virginia and therefore not citizens of different states. *See* 28 U.S.C. § 1332; Compl. ¶¶ 2–3.

[26] *Shavitz v. Guilford Cty. Bd. of Educ.*, 100 F. App'x 146, 151–52 (4th Cir. 2004) (interpreting the threshold relatedness requirement in 28 U.S.C. § 1367(a) to require a "common nucleus of operative fact" between the jurisdictionally sufficient and jurisdictionally insufficient claims); *Travelers*, 675 F.2d at 638 ("It matters not if we ask whether this claim is a proper cross claim under Rule 13(g) or whether this claim is supported by ancillary jurisdiction. The analysis is substantially the same.").

[27] *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."); *Archie v. Nagle & Zaller, P.C.*, 790 F. App'x 502, 505–06 (4th Cir. 2019) (affirming district court's decision to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) after disposing federal claim); *Tripp v. Charlie Falk's Auto Wholesale, Inc.*, 290 F. App'x 622, 632 (4th Cir. 2008) (same).

- The Clerk will be directed to award, from the interpleader deposit (Dkt. 20), $247,924.97 to Emma Yohannan and $247,924.97 to Ethan Yohannan; and

- The Clerk will be directed to award half of any accrued interest on the interpleader deposit to Emma Yohannan and the other half of any accrued interest on the interpleader deposit to Ethan Yohannan.

(2) Summary judgment on Cross Claim 1, Cross Claim 2, and Third-Party Claim 2 must be granted *sua sponte* for Moore and dismissed in light of the decision on the Rule 22 interpleader action.

(3) Third-Party Claims 1 and 3 and Moore's claim for reimbursement must be dismissed without prejudice because supplemental jurisdiction is discretionarily declined pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate Order will issue separately.

The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record, to Emma and Ethan Yohannan at the address to be provided by counsel, and to counsel for Northwestern at the last known address of record.

Alexandria, Virginia
January 5, 2021

T. S. Ellis, III
United States District Judge

14